S. T. HERZL AMDUR, d/b/a AMDUR REALTY COMPANY, Plaintiff-Appellant, *v.* SAMUEL ALEXANDER *et al.,* Defendants-Appellees.

(No. 58157;

First District (4th Division)—December 19, 1973.

Seyfarth, Shaw, Fairweather & Geraldson, of Chicago (Raymond J. Kelly, of counsel), for appellant.

Collins & Amos, of Chicago (Alan O. Amos, of counsel), for appellees.

Mr. JUSTICE DIERINGER delivered the opinion of the court:

This is an appeal from a judgment entered in the Circuit Court of Cook County directing a verdict for the defendants at the close of the evidence presented by the plaintiff, S. T. Herzl Amdur, d/b/a Amdur Realty Company.

The issues presented for review are whether the trial court erred in directing a verdict for the defendants, and whether the plaintiff's complaint stated a cause of action upon which relief could be granted.

The plaintiff, S. T. Herzl Amdur, is a licensed real estate broker doing business as Amdur Realty, which specializes in dealing with photographers by obtaining suitable buildings and studios for their purposes. During the year 1963, the plaintiff had occasion to discuss a certain building located at 213-221 West Erie Street, Chicago, with Aldis Browne, Jr., of Browne and Storch, Inc., also a real estate firm. The building located at 213-221 West Erie was owned by the Bowman Dairy Company and had recently been offered for sale by the company through an advertisement placed in the Chicago Sunday Tribune by Aldis Browne, Jr. At the time of their discussion concerning this real estate, Browne indicated to the plaintiff that the purchase price placed on the building by Bowman was $100,000; however, the company would accept an offer of $85,000. Thereafter, the plaintiff agreed to share any commission that might be forthcoming from the sale of the building with Browne, who introduced the plaintiff to Frank Killian, the real estate manager for the Bowman Dairy Company. Killian sent the plaintiff floor plans of the building, met with the plaintiff at the building on several occasions, and made arrangements to show the building at the plaintiff's request.

The plaintiff first showed the building to Mel Casper, a professional photographer, as a potential location for conversion into a commercial photography studio, however, Casper could not afford the purchase price. Thereafter, in August of 1963, the plaintiff received a telephone call from two of the defendants herein, Conrad Bailey and Gene Perraud, both of whom were commercial photographers interested in obtaining a studio to establish their own business. Following this conversation, the plaintiff made arrangements for Frank Killian of Bowman to meet with Bailey and Perraud and show them the building.

Following a viewing of the building, the defendant Bailey called the plaintiff and indicated that both he and Perraud had seen the property and were agreeable to the purchase price of $85,000; however, they wished to have another person view the premises prior to any attempt on their part to secure the necessary financing to purchase the building.

On August 22, 1963, the plaintiff received a telephone call from Sam-

uel Alexander, an attorney who purportedly was representing Bailey and Perraud. Alexander advised the plaintiff he had viewed the Erie Street building and would not only recommend his clients purchase the property but also would arrange the necessary financing for the property, if the plaintiff would split his real estate commission with him. The plaintiff asked Alexander at that time if he was receiving a legal fee for his services and was told by Alexander the fee he was receiving was not adequate, therefore it would be in the plaintiff's best interest to split his commission with Alexander. Following a discussion of Alexander's offer with Aldis Browne, the plaintiff advised Alexander he had discussed the offer with the other real estate broker involved in any potential sale of the property, where the plaintiff would be the broker of record and they were not willing to split the real estate commission. Alexander then made a counteroffer which the plaintiff also rejected, whereupon he was advised by Alexander that plaintiff would regret such a decision.

After these discussions with Alexander on August 22, 1963, the plaintiff sent a letter to defendant Bailey, wherein he confirmed his discussions with Alexander concerning the purchase of the property by both Bailey and Perraud and suggested Alexander prepare the necessary documents. A copy of this letter was sent to both Aldis Browne and Samuel Alexander. Aldis Browne thereupon wrote a letter to Frank Killian of Bowman registering Bailey and Perraud as the plaintiff's clients and referring to Alexander as their attorney. This letter was sent according to the custom of the real estate brokerage field so as to advise Bowman that should Bailey and Perraud attempt to directly contact Bowman concerning the property, Bowman would have been advised of the broker's role and these potential purchasers can then be referred back to the broker, thereby protecting his interests.

On September 9, 1963, the plaintiff met with Bailey and Perraud to further discuss the purchase of the building. At this time the plaintiff advised Bailey and Perraud of Alexander's requests for a percentage of his real estate brokerage commission in the event of a sale of the property to them, however they were determined to retain Alexander as their attorney since he was helping them to arrange the requisite financing to purchase the building. Subsequent to this meeting, the plaintiff was advised Bailey and Perraud were ready to proceed with the purchase of the building, however he never heard from them again.

Early in 1964 the plaintiff met Mr. Killian of Bowman and was advised Bowman had entered into a real estate sale contract for the building located at 213-221 West Erie with a party named Richard McKiernan. The real estate sale contract had been presented to Bowman on September 10, 1963, by Warnstedt and Associates, a realty firm, the

purchase price being $85,000 with the real estate brokerage commission going to William Warnstedt. Subsequently, on October 10, 1963, the property in question was sold to the Warnstedt-Erie Corporation for $140,000. William Warnstedt was the registered agent of such corporation and defendants Bailey and Perraud were directors and officers of the corporation, which later changed its name to the 221 Building Corporation.

On December 1, 1963, Richard McKiernan, who was the original purchaser of the building from Bowman, issued a direction letter to Bowman to convey the title to the 213-221 West Erie Building to the Lawndale National Bank as Trustee under Trust No. 4354, which Bowman did on December 27, 1963. The trust agreement establishing Trust No. 4354 with the Lawndale National Bank was drafted by Samuel Alexander and reflects defendants Bailey and Perraud as undivided one-half owners thereof.

In light of the aforementioned factual information, the plaintiff filed a lawsuit in the Circuit Court of Cook County to recover the real estate brokerage commission which had been claimed by defendant William Warnstedt for the sale of the Bowman building. The plaintiff also sought punitive damages from the purchasers and those others who participated in the purchase to the exclusion of the plaintiff from collecting the real estate brokerage commission for the ultimate sale of the building to those parties, namely Bailey and Perraud, who had been registered with Bowman as the plaintiff's clients. Following a jury trial, wherein the plaintiff presented the factual information heretofore set forth, the defendants moved for a directed verdict which the trial court granted. The plaintiff herein appeals from the judgment entered by the trial court subsequent to the direction of the verdict in favor of the defendants.

The first issue presented for review is whether the trial court erred in directing the verdict in favor of the defendants.

The plaintiff contends the trial court was in error in directing the verdict in favor of the defendants. The basis for this contention is the plaintiff's assertion that on a motion for a directed verdict, the power of the trial court is limited strictly to determining whether there is evidence legally tending to prove the facts alleged in the complaint. (*Krueger v. Richardson* (1945), 326 Ill. App. 205.) Furthermore, the plaintiff argues that it is well established that the trial court will direct a verdict only if all the evidence, when viewed in its aspect most favorable to the party opposing the motion for a directed verdict, so overwhelmingly favors the moving party that no contrary verdict based on that evidence could ever stand. (*Pedrick v. Peoria and Eastern R.R. Co.* (1967), 37 Ill.2d 494.) The plaintiff urges that since the evidence which

he has presented to the trial court raises certain factual questions which do not favor the defendants herein, as well as certain other facts which stand totally unrefuted and therefore clearly favor the plaintiff, it was error for the trial court to direct the verdict in favor of the defendant rather than to allow these questions to be resolved by the jury.

A thorough review of the record reflects the plaintiff's contention is well taken. Certain factual questions upon which the plaintiff's complaint is based, namely, that the plaintiff was registered with the Bowman Dairy Company as the broker for both Bailey and Perraud, that Alexander was registered as their attorney, and that Bowman eventually transferred title to the property to a trust wherein Bailey and Perraud were the undivided one-half owners, stand unrefuted. Moreover, other elements of the plaintiff's complaint which have been refuted by certain of the defendants who testified as adverse witnesses pursuant to section 60 of the Civil Practice Act (Ill. Rev. Stat., ch. 110, § 60) present questions as to the weight and credibility which should have been afforded to those witnesses and which the jury should have been allowed to determine. We therefore reverse the judgment of the trial court directing the verdict in favor of the defendants and remand this cause to the Circuit Court for a new trial. For this reason we find it unnecessary to discuss the other issue which the plaintiff has presented for review.

For the reasons stated herein, the judgment of the Circuit Court of Cook County is reversed and the cause is remanded for a new trial.

Reversed and remanded.

BURMAN, P. J., and ADESKO, J., concur.